IN THE CIRCUIT COURT OF ARLINGTON COUNTY
IN AND FOR THE COMMONWEALTH OF VIRGINIA

COMMONWEALTH OF VIRGINIA,

Plaintiff,

v. Case No. CR99-1764

ANTONIO SHERROD JONES,

Defendant.

RECEIVED
2014 SEP -8 AM 7:58
ARLINGTON CIRCUIT COURT CLERK

**MOTION TO VACATE AND/OR NULLIFY DEFENDANT'S MISDEMEANOR TRAFFIC CONVICTION PURSUANT TO THE CODE OF VIRGINIA § 19.2-160**

Antonio Sherrod Jones ("Defendant"), Pro Se, moves this Court, pursuant to the Code of Virginia § 19.2-160, to vacate and/or nullify the misdemeanor traffic conviction, whereby Defendant was adjudged a habitual offender, in violation of the Code of Virginia § 46.2-367, because Defendant was tried, in absentia, without the assistance of counsel, in violation of the Code of Virginia § 19.2-160, and the unconstitutional conviction has continuing adverse consequences.

I.

**FACTS**

On August 18, 1999, Magistrate F. A. Nauheimer issued a Warrant of Arrest against Defendant after having found Defendant to be a habitual traffic offender, in violation of the Code of Virginia § 46.2-367. See Arlington County v. Antonio Sherrod Jones, Case No. 99-1794, copy of Warrant of Arrest attached hereto as Exhibit A.

EXHIBIT B

On August 20, 1999, Defendant advised that court of his intent to hire counsel to represent him at the hearing set for October 28, 1999. See Exhibit B.

On October 28, 1999, Defendant appeared before the court, while being represented by William Moffett, Esq., and was found guilty and sentenced to thirty (30) days imprisonment.

Afterwards, Defendant notified the court of his intent to appeal the court's decision to the Arlington County Circuit Court. That hearing was subsequently set for January 27, 2000 before Judge Benjamin Hendrick.

On January 26, 2000, Defendant had a consultation scheduled to retain counsel for the Circuit Court hearing the next morning. However, Defendant awakened to the entire surrounding area having been hit with a massive snow storm. See Winter Wallop? Norfolk Records 6 Inches Of Snow, Other Areas Receive More That A Foot, Road Crews Find Going Is Tough In One Of The Region's Biggest Storms," Virginian-Pilot, January 26, 2000, copy attached hereto as Exhibit C; and "Snow Takes Toll On Area Events," The Washington Post, January 26, 2000, copy attached hereto as Exhibit D. The storm was so severe, a "State of Emergency" went into effect across the State. See Exhibit C. Consequently, Defendant's appointment had to be canceled.

Defendant immediately called the Clerk of the Circuit Court and informed that Office that, because of the weather condition in the Hampton Rhodes area, Defendant could not meet with counsel as scheduled; and feared that the weather could prevent him from appearing at the hearing the following morning. The female Clerk

on the telephone told Defendant that she had seen the warnings on the news, and to call again in the morning if conditions did not improve.

The morning of January 27, 2000 arrived with snow removal, digging out automobiles, and traveling on local roads impossible. As a result, many residents, including Defendant, were left home-bound while others were just stranded. See "State Taken By Storm, Virginia Digging Out Amid Risk Of More Woes," Richmond Times-Dispatch, January 27, 2000, copy attached hereto as Exhibit E; and "Snow Removal Runs Gamut; Though Major Roads Are Clear, Some Areas Are Still Digging Out," The Washington Post, January 27, 2000, copy attached hereto as Exhibit F. Similarly, the weather caused many local, State, and Federal agencies to close, and Governor Gilmore to deploy the Virginia National Guard. See Exhibit E.

Defendant called the Circuit Court Clerk-surprised to find the Court opened-and explained that the weather hampered his ability to make it that morning. Although the Clerk that mroning was not the same one that Defendant spoke to the day before, she stated that she would get a note to Judge Hendrick, and to call back later, or the following morning, to find out what happened.

However, unknown to Defendant, the case was called in his absence, upon the motion of the Commonwealth's Attorney, John Lynch, Esq., and the Court tried it in the absence of both Defendant or counsel appearing on Defendant's behalf. See Exhibit G.

The Court found Defendant guilty of "Driving After Having Been Adjudicated An (sic) Habitual Offender," and sentenced him to ninety (90) days imprisonment, a fine in the amount of $2,500, and payment of the costs of the proceedings. Id. A Warrant was also issued for Defendant's failure to appear. See Exhibit H.

When Defendant called the Clerk's Office later that day (January 27, 2000), the Clerk told Defendant that the Court tried him in absentia, and ordered that Defendant pay a fine in the amount of $2,500-she said nothing about the ninety (90) days imprisonment or the warrant for failure to appear.

Instead, in response to Defendant's question if there was any way to get the fine reduced, she advised Defendant that he could be placed on an installment plan, and told him that he would have to come to sign up for it. Sometime later, Defendant went to the Clerk's Office, signed up for the plan, and appeared monthly to make payments. See, e.g., Exhibits I, J, and K. During everyone of those appearances, Defendant was never informed of the 90 days imprisonment or the failure to appear warrant.

On June 26, 2003, the Circuit Court of the City of Portsmouth restored Defendant's privilege to operate a motor vehicle, after having been declared a habitual offender pursuant to the Code of Virginia § 46.2-361(A). Thus, that Court left Defendant with the impression that no driving restrictions or warrants existed. See Exhibit L.

After incurring a federal conviction in 2005, Defendant became aware of the Arlington County Warrant and the 90 day term of imprisonment. Federal Bureau of Prisons officials contacted

the Arlington County Sheriff's Office on Defendant's behalf to ascertain that entity's intent regarding the case. See Exhibit M. The Sheriff's Office responded on May 9, 2005 and stated that the Warrant was withdrawn. Id. However, the conviction, fine, and imprisonment term were not. Id.

II.

**ARGUMENT**

This Court is compelled to vacate and/or nullify Defendant's misdemeanor traffic conviction, wherein Defendant was declared a habitual offender, in violation of the Code of Virginia § 46.2-367, because Defendant was tried in absentia-due to circumstances beyond his control-without the assistance of counsel (or previously knowingly, voluntarily, and intelligently waiving that right), contrary to Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); and United States v. Tucker, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972).

Argersinger commands that "[A]bsent a knowing and intelligent waiver, no person [including Defendant] may be imprisoned for any offense, whether classified a petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37. Speaking directly to misdemeanor court judges, the Court stated:

> Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though laws permits it, unless the accused is represented by counsel. He [or she] will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts

> ... those that end up in the actual deprivation of liberty ... the accused will receive the benefit of the 'guiding hand of counsel' so necessary when one's liberty is in jeopardy.

Id. at 40. Similarly, to permit an uncounseled conviction to be used to enhance a defendant's punishment erodes the constitutional right to counsel guaranteed every defendant. See Tucker, supra.

In Defendant's driving while declared a habitual offender charge, when Defendant did not appear that morning, the Commonwealth Attorney moved to try the case in Defendant's absence, and without the appearance of counsel on Defendant's behalf. The Court consented, without elaboration or explanation, found Defendant guilty, and imposed a 90 day term of imprisonment and other lesser penalties.

Yet, as Defendant had informed the Clerk's Office the day before, and again on the morning set for trial, "uncontrollable circumstances," i.e., the severe snow storm that blanketed the Virginia area, had Defendant stranded at home. See Exhibits C, D, E, and F.

The term "uncontrollable circumstances" is not defined in any statute Defendant could find. However, at the very least, it means something that actually prevents a person from doing something expected of him. According to United States v. Springer, 51 F.3d 861, 866 (9th Cir. 1995), "uncontrollable" is something "that cannot be managed, something that is ungovernable," and the "very idea of 'prevent' is something that forestalls, frustrates[,] or deprives one of the power of acting." Id.

In this case, at best, it would require proof that Defendant did not contribute to the creation of the uncontrollable circumstance in reckless disregard of a requirement to appear for trial on January 27, 2000. At the very least, a severe weather condition that brings traffic to a halt, strand thousands, leaves many more home bound, causes the shutdown of many local, State, and federal agencies, and causes the Governor to declare a "State of Emergency" and deploy the Virginia National Guard, should be prima facie evidence of an "uncontrollable circumstance" beyond Defendant's control. In other words, Defendant's absence on the day of trial was unavoidable.

Nevertheless, in total disregard of Argersinger, the Commonwealth Attorney and the Court were adamant about trying the case in Defendant's absence and without counsel present on Defendant's behalf. Instead, the Court should have at least "name[d] a lawyer to represent the [Defendant] before the trial start[ed]." 407 U.S. at 40. By not doing so, the Court violated the clear dictate of both Argersinger and Tucker.

The ensuing collateral legal consequences of that action effects Defendant to this very day. See, e.g., Sibron v. New York, 392 U.S. 40, 50-58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (can exacerbate the number of convictions on a defendant's record); Carafas v. LaVallee, 391 U.S. 234, 237-38, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (can effect business reputation and create employment issues); and Ginsberg v. New York, 390 U.S. 629, 633-34 n.2, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968) (can make defendant uneligible under State and municipal licensing laws).

Most importantly, as Sibron predicted, that unconstitutional conviction caused Defendant's late-in-time federal conviction to be severely lengthened. See USSG § 4A1.1 and 4A1.2. In fact, that conviction, combined with other misdemeanor traffic offenses that have been since set aside, nullified, or vacated, caused Defendant to have a total criminal score of 8 (instead of 1)- despite the fact that Defendant had absolutely no previous felony convictions. Id.; USSG Chapter 5, Part A (Sentencing Table).

The record of the misdemeanor trial clearly indicates that Defendant was not represented by counsel, and did not formally, i.e., knowingly, voluntarily, and intelligently waive the right to that representation. See Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In this context, "formally" means the Court ascertaining by oral examination whether or not Defendant desired to waive his right to counsel, and, at the very least, providing that Defendant sign some type of form indicating his waiver before the trial commenced.

Indeed, it was utterly impossible for the Court to secure such a waiver because Defendant was not even in the Courtroom.. See, e.g., United States v. Hondo, 366 F.3d 363, 368 (4th Cir. 2004) (Diana Gribbon Motz, J., dissenting) (recognizing that asking the defendant if he understood the consequences of proceeding pros se was "'quite obviously impossible' when a defendant fails to appear in court)" (quoting State v. Thompson, 584 S.E.2d 131, 136 (S.C. Ct.App. 2003)).

III.

CONCLUSION

All things considered, Defendant's uncounseled misdemeanor conviction, tried in absentia on January 27, 2000, for being a habitual offender, in violation of the Code of Virginia § 46.2-367; and that "end[ed] un in the actual deprivation of [Defendant's] liberty," i.e., a ninety (90) day term of imprisonment, is unconstitutionally invalid. Argersinger, 407 U.S. at 40; Tucker, supra. Consequently, Defendant therefore prays that this Court enter an Order forthwith vacating and/or nullifying that conviction.

Dated this 20th day of August 2014.

Respectfully submitted,

ANTONIO S. JONES
Defendant, Pro Se

CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing Motion to Vacate and/or Nullify Defendant's Misdemeanor Traffic Conviction Pursuant to the Code of Virginia § 19.2-160 upon the Plaintiff, by depositing a true and correct copy thereof in the United States Mail, First Class Postage prepaid, to the Commonwealth Attorney, 1425 North Courthouse Road, Arlington, Virginia 22201, counsel of record for the Plaintiff on August 20, 2014.

ANTONIO S. JONES

ANTONIO S. JONES 55450-083
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

# WARRANT OF ARREST–MISDEMEANOR (STATE)

VA. CODE §§ 19.2-71,-72

Arlington
CITY OR COUNTY

General District Court ☐ Criminal ☒ Traffic

☐ Juvenile and Domestic Relations District Court

TO ANY AUTHORIZED OFFICER:

You are hereby commanded in the name of the Commonwealth of Virginia forthwith to arrest and bring the Accused before this Court to answer the charge that the Accused, within this city or county, on or about 08/18/1999 (DATE) did unlawfully in violation of Section 46.2-357, Code of Virginia:

drive a motor vehicle or self-propelled machinery or equipment on the highway in manner that did not endanger the life, limb, or property of another after having been found to be a habitual offender under Article 9 of Title 46.2.

I, the undersigned, have found probable cause to believe that the Accused committed the offense charged, based on the sworn statements of

OFF T. WILLIAMS #A315 MWAA, Complainant.

Execution by summons ☐ permitted at officer's discretion. ☒ not permitted.

08/18/1999 06:48 PM
DATE AND TIME ISSUED

F. A. Nauheimer, Magistrate
☐ CLERK ☐ MAGISTRATE ☐ JUDGE

**SUMMONS** (If authorized above and by serving officer)
You are hereby commanded to appear before this court located at ......

on ...... at ...... AM/PM

I promise to appear in accordance with this Summons and certify that my mailing address as shown at right is c[...]

ACCUSED

WARNIN[...] ACCUSED: You may be tried and convicted in your absence if you fail to appear in response [...]s Summons. Willful failure to appear is a separate offense. SIGNIN[...] IS NOTICE DOES NOT CONSTITUTE AN ADMISSION OF GUILT.

EXHIBIT A

FORM DC- [...] (114-6-010 5/99)

CASE NO. 95-1764

ACCUSED:
JONES, ANTONIO SHERROD
LAST NAME, FIRST NAME, MIDDLE NAME
228 E CHOWAN DR
ADDRESS/LOCATION
PORTSMOUTH, VA.

To be completed upon service as Summons
Mailing address ☐ Same as above
☐

COMPLETE DATA BELOW IF KNOWN

| RACE | SEX | BORN MO. | BORN DAY | BORN YR. | HT FT. | HT IN. | WGT. | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|---|
| B | M | 04 | 14 | 70 | 5 | 08 | 160 | BR | BK |

SSN 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

Commonwealth of Virginia
**WARRANT OF ARREST**
CLASS U MISDEMEANOR

☒ EXECUTED by arresting the Accused named above on this day:
☐ EXECUTED by summoning the Accused named above on this day:
☐ For legal entities other than individuals, service pursuant to Va. Code § 19.2-76.

AUG 18, 1999 1902
DATE AND TIME OF SERVICE

TONYA WILLIAMS, ARRESTING OFFICER

A315 MWAA PD
BADGE NO., AGENCY AND JURISDICTION

for ______ SHERIFF

Attorney for the Accused:

HEARING DATE AND TIME

10/28/99 - 10:30

War/Sum
013GT-AR19919530



Courtroom 3C

I have been advised by this Court of my right to be represented by a lawyer in the trial or preliminary hearing of the charge(s) pending against me.

Please check one:

☑ I have told the Court that I intend to hire my own attorney.

or

☐ The court has told me that I am not eligible for a court-appointed lawyer.

I understand that my trial date is Oct. 28, 1999 10:30 A.M.

I understand that:

- **If I want to be represented by a lawyer**, I must have that lawyer present with me in court on my trial date.
- **If I do not have a lawyer with me on my trial date**, I will be considered to have given up my right to be represented by a lawyer and my case will be heard without a lawyer to represent me.
- **If I want witnesses to be subpoenaed for my trial**, it is my duty to request my lawyer to do so or to do it myself by contacting the clerk of the General District Court, located in Room 2400, Arlington County Justice Center, 1425 North Courthouse Road, Arlington, Virginia 22201.
- A request for a subpoena must be made immediately so that it can be served prior to the trial date. If I do not request subpoenas immediately, I will be deemed to have waived the right to subpoena witnesses.

In addition, I understand the following:

- **If I have been unable to retain an attorney and still wish to do so**, I must appear at the clerk's office (Room 2400) at least two (2) weeks before my scheduled trial date. On the next business day the court will consider whether to postpone my trial to give me more time to hire a lawyer. If I do not follow this requirement, I will be considered to have given up my right to counsel.
- **If I decide I want to be evaluated to see if I qualify for a court-appointed lawyer**, I must appear at the clerk's office (Room 2400) at least two (2) weeks before my scheduled trial date. On the next business day the court will decide whether I qualify for a court-appointed lawyer. If I do not follow this requirement, I will be considered to have given up my right to counsel.
- **If I do not appear for my trial**, a trial may still be conducted and I may be convicted.

I have read this document (or it has been read to me) and I understand it.

[signature]
DEFENDANT

Upon oral examination, the undersigned judge of this Court finds that the Defendant whose signature appears above has knowingly, voluntarily, and intelligently executed this statement.

[signature]
JUDGE

August 20, 1999
DATE

EXHIBIT B

★2661

America's Newspapers
The Ultimate Newspaper Archive

**Paper: Virginian-Pilot, The (Norfolk, VA)**
**Title: WINTER WALLOP: NORFOLK RECORDS 6 INCHES OF SNOW, OTHER AREAS RECEIVE MORE THAN A FOOT ROAD CREWS FIND GOING IS TOUGH IN ONE OF REGION'S BIGGEST STORMS**
**Date: January 26, 2000**

The Blizzard of 2000, born of a little storm that exploded with startling ferocity Tuesday, body-slammed the Eastern Seaboard from Charleston to Boston and brought daily life to a near standstill with snowfall measured by the foot.

``This is a snowstorm of historical proportions," said Colin Marquis, a winter weather expert at The Weather Channel in Atlanta.

A state of emergency is in effect across Virginia and North Carolina.

Hampton Roads skidded to a halt as soaking overnight rains gave way at dawn to sleet and then wind-driven snow that persisted into the evening.

Blizzard conditions gripped the area just after noon, with snow falling at one to two inches an hour. ``These have been some very impressive snowfall rates in Norfolk," said Paul Kocin, a Weather Channel meteorologist.

Visibility fell to little more than a hundred feet while winds gusting to more than 35 mph combined with a temperature of 30 to produce a wind chill reading near zero.

Still, it could have been worse, as the delayed changeover to snow - it had been expected six hours earlier - spared the metropolitan area even heavier snows. Had the inch of rain overnight been snow, it would have brought 8 to 10 inches more. In the end, Norfolk was hit with about half a foot of snow, with drifts up to 2 feet.

Just a few miles to the west and north, however, the storm was a whopper, with 8 to 10 inches in western Chesapeake, Suffolk and Williamsburg, and 14 inches in Petersburg.

All the snow was expected to end by this morning, as the storm steers into New England.

Raleigh, N.C., was buried beneath 18 inches - the most ever recorded in a single storm there - leaving people trapped wherever they were late Monday.

``Fifteen of those inches fell in just a four-hour period. That is just incredible," said Jeanetta Jones of The Weather Channel.

By noon, the storm's barometric pressure had dropped to 28.91 inches, or 979 millibars - indicative of a very powerful storm. In comparison, the lowest pressure on record locally, in a March 1932 nor'easter, was 28.35 inches.

The storm's winds battered the region all night, gusting to 55 mph at times and near hurricane force at the Chesapeake Bay Bridge-Tunnel and Chesapeake Light.

``I couldn't sleep," said Patricia Mills, who lives in Norfolk, near Military Highway. ``It wasn't just limbs falling and the sound of the rain; it was the screeching wind as it came under our garage door and shook it."

In downtown Norfolk, rising tides flooded low-lying streets and sent the Elizabeth River lapping against flood gates that protect the business district, while, in Virginia Beach, pounding ocean waves ate away chunks of the Oceanfront and even swallowed Boardwalk construction gear.

Schools and businesses were closed, most airline flights were canceled,and highway travel turned treacherous.

Highway crews hit the streets before dawn as the mercury dipped to freezing and wet surfaces began to glaze over. By mid-morning, most routes were slushy and slippery. Vehicles crawled along neighborhood streets, as drivers found that a slight turn at more than 20 mph left their car sliding along the icy surface.

**EXHIBIT C**

Snow Takes Toll On Area Events Case 2:03-cr-00172-AWA-FBS Document 105-2 Filed 08/11/15 Page 13 of 19 PageID# 277 Page 1 of 2

Hall Honda Virginia Beach
Visit Our Website or Call 877-478-8228
Come check out our wide selection of NEW VEHICLES AND GREAT MONTHLY SPECIALS VIEW NOW

Real Estate Rentals Cars Today's Paper Going Out Guide Find&Save

PostTV | Politics | Opinions | Local | Sports | National | World | Business | Tech | Lifestyle | Entertainment | Jobs | More

In the News Israel Russia McDonnells Stephen A. Smith Jesse Ventura UCLA

**FREE Article Preview**

The Washington Post

Buy Complete Document

## Snow Takes Toll On Area Events

*[FINAL Edition]*

The Washington Post - Washington, D.C.

| | |
|---|---|
| Subjects: | Snow; Cancellations; Professional sports |
| Author: | Wyche, Steve; El-Bashir, Tarik |
| Date: | Jan 26, 2000 |
| Start Page: | D.01 |
| Section: | SPORTS |

The snowstorm that blanketed the Washington area yesterday also wiped clean the slate of events taking place throughout the region-- postponing everything from the Washington Wizards-New York Knicks game at MCI Center to a full schedule of more than 150 girls and boys high school basketball games. In addition, many events scheduled for today also have been postponed.

The storm, which pummeled the entire mid-Atlantic Region, also forced the postponement of the Maryland-North Carolina men's basketball game scheduled for tonight in Chapel Hill, N.C. The game has been moved to Thursday and still will be televised by ESPN. Tonight's George Washington-St. Bonaventure men's game remains scheduled for 7:30 at Smith Center.

The Wizards-Knicks game, postponed by the NBA, will be made up March 8 at 7 p.m. at MCI Center. Tickets for last night's game can be used for that date. Tickets also can be purchased for the makeup game because last night's contest was not sold out. No other NBA games were postponed because of the snowstorm that hit much of the East Coast.

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

Buy Complete Document

Ads by Google

**Most Viewed Articles** (Updated Daily)
- Colder Winters Held Dawn of New Ice Age
- U.S. Scientist Sees New Ice Age Coming
- Soviets Say Nixon Had Been Booked on Flight 007
- Mexican Aviator Plans Hop to Cuba and Spain
- Mears at Omsk, Siberia

Log In

Powered by ProQuest Archiver

Start a New Search | Search 1877 - 1995 Historical
About the Archive | Pricing | Account & Purchases | Help | Terms of Service

FEATURED ADVERTISER LINKS

Lawyer: Asbestos Lung Cancer, Hydroxycut, Raptiva
Mesothelioma Lawyer, Stryker Hips, Shoulder Pain Pump
Save Up To 75% On Cruises at Vacations To Go
3 Stocks to Help Rebuild Your Wealth-Click Here!

Ads by Google

New Single Family Homes
Rehoboth Bay Gated Community. 2 Miles From Beach. Visit Today!
piccardhomes.com/BeachHomes

Search Obituaries Free
1) Search anyone's name. 2) View their obituary instantly.
ancestry.com/Obituaries

Free Obituaries Search
1) Type In Someone's Name 2) Get Obituary Now. Try Free!
obituaries.archives.com

The Washington Post SUBSCRIBE PostTV Politics Opinions Local Sports National World Business Tech Lifestyle Entertainment Jobs

More ways to get us: Home delivery, Digital Subscription, Gift Subscription, Mobile & Apps, Newsletter & Alerts, Washington Post Live, Reprints & Permissions, Post Store, Photo Store, e-Replica, Archive, RSS, Facebook, Twitter

Contact Us: Help & Contact Info, Reader Representative, Digital Advertising, Newspaper Advertising, News Service & Syndicate

About Us: In the community, Careers, PostPoints, Newspaper in Education, Digital Publishing Guidelines

Partners: WP BrandConnect, Capitol Deal, Fashion Washington, Washington Post, El Tiempo Latino, Express, Find&Save

washingtonpost.com
Ad Choices

© 1996-2014 The Washington Post Terms of Service Privacy Policy Submissions and Discussion Policy RSS Terms of Service

EXHIBIT D

http://pqasb.pqarchiver.com/washingtonpost/doc/408572966.html?FMT=ABS&FMTS=A... 7/31/2014

### *STATE TAKEN BY STORM*
### *VA. DIGGING OUT AMID RISK OF MORE WOES*

*Richmond Times-Dispatch*
*January 27, 2000*
*Author: Peter Bacque*
*Times-Dispatch Staff Writer*
*Call Peter Bacque at 649-6813 or e-mail him at*
*pbacque@timesdispatch.com*
*Times-Dispatch staff writers Paul Bradley, Kiran Krishnamurthy, Lawrence Latane III, Andrew Petkofsky, Jamie C. Ruff, Gordon Hickey and Rex Springston contributed to this report.*

***Estimated printed pages: 3***

Still mired by Tuesday's great snow, Virginia faces the chance of more weather aggravation come Sunday.

"The latest model guidance is hinting at another potential winter storm event for Sunday and Monday," said meteorologist Bill Samm<ho>ler with the National Weather Service in Wakefield. "The jury's still out on how that event could affect us." Tuesday's snowstorm apparently claimed at least one life. Searchers in Danville yesterday found the body of a missing 86-year-old man who had wandered from home before the storm.

The commonwealth pulsed again slowly yesterday as more roads were plowed, some institutions went back to work, mail carriers took up their appointed rounds, airlines started flying, and trains and buses began rolling again.

But many local, state and federal agencies continued to be closed, more than a few travelers remained stranded, and cars and trucks were glued in place under - and between - piles of snow and ice.

"It's put a hold on everything," said Westmoreland County Sheriff C.W. Jackson.

Freezing cold will grip much of the state through the weekend, which means that snow will stay in place, too.

Road crews made Virginia's main highways passable yesterday. All lanes are expected to be open for this morning's commute, the Virginia Department of Transportation said.

As snow plows moved onto narrow, hard-to-clean subdivision streets and back roads, state officials asked Virginians to be patient.

Winds and another shot of snow in Russell, Washington and Wise counties in far Southwest Virginia yesterday stymied state Transportation Department crews by blowing snow back across roads.

But Y2K's first major winter storm gave Northern Virginia VDOT officials a chance - after three years of waiting - to try out a high-tech experimental system to keep track of snowplows. According to VDOT support contractor William Campenni, the $700,000 pilot program - based on satellite positioning and cellular telephone technology - worked.

"You can see where they are in real-time and see what their activities are in real-time," he said, "whether they're plowing [or] spreading chemicals."

Supervisors also could see whether any of the drivers of about 80 plows were lost, stuck or goofing off. "We noticed a truck was stationary," Campenni said. "They went out and checked on it. The guy was taking a nap."

Tuesday's storm - which dumped more than a foot of snow on much of eastern, Northern and Southside Virginia - is costing the state close to $1 million a day in snow-removal expenses.

Called up by Gov. Jim Gilmore's emergency declaration, the Virginia National Guard had about 100 soldiers on duty around the state yesterday, according to Maj. Tom Wilkinson, a Guard spokesman. The Guard sent soldiers and humvees to Petersburg and Powhatan County yesterday to provide transportation for police and emergency workers.

**EXHIBIT E**

Mail carriers hit the streets again in Richmond yesterday, and Fredericksburg-area carriers hoped to reach

Real Estate Rentals Cars Today's Paper Going Out Guide Find&Save

PostTV | Politics | Opinions | Local | Sports | National | World | Business | Tech | Lifestyle | Entertainment | Jobs | More

In the News Gender pay gap Gaza California beach Eric Garner Immigration Taiwan

FREE Article Preview

The Washington Post Buy Complete Document

## Snow Removal Runs Gamut; Though Major Roads Are Clear, Some Areas Are Still Digging Out

*[FINAL Edition]*

The Washington Post - Washington, D.C.

| | |
|---|---|
| Subjects: | Public schools; Storms; Roads & highways; Snow removal |
| Author: | Layton, Lyndsey; Sipress, Alan |
| Date: | Jan 27, 2000 |
| Start Page: | A.01 |
| Section: | A SECTION |

Snow, like politics, turned out to be local yesterday. The performance of road crews in clearing the region's streets and highways--and how their work affected life therein--varied wildly between states, from county to county and even within the same neighborhood.

By and large, motorists gave a mittened thumbs-up to public works crews in Maryland, Virginia and especially the District, which has a spotty track record when it comes to snow-riddance. Main highways were open by the morning rush hour, allowing one Northern Virginia official to boast that roads there looked "shampooed and blow-dried."

Yesterday allowed the region to take a giant step toward near- normalcy today. Travelers resumed interrupted journeys at busy airports, bus terminals and rail stations. And after its second consecutive shutdown, the federal government was scheduled to reopen today, as were public schools in all major jurisdictions except Anne Arundel, Calvert and Charles counties. Several systems, however, planned to start two hours late. [List of closings across region, Page B4.]

Reproduced with permission of the copyright owner. Further reproduction or distribution is prohibited without permission.

Buy Complete Document

Advertisement

Hall Honda Virginia Beach
Come check out our wide selection of NEW VEHICLES AND GREAT MONTHLY SPECIALS
VIEW NOW
Visit Our Website or Call 877-478-8228

Featured Advertiser Links

Lawyer: Asbestos Lung Cancer, Hydroxycut, Raptiva>>
Mesothelioma Lawyer, Stryker Hips, Shoulder Pain Pump>>
Save Up To 75% On Cruises at Vacations To Go>>
3 Stocks to Help Rebuild Your Wealth-Click Here!>>

Ads by Google

Looking For a New Car?
Visit Us Today! Find Your NEW VEHICLE Here.
www.hallhonda.com

Free Obituary Search
1) Enter any name & search free! 2) Get their obituary instantly.
obituaries.ancestry.com

Man Cheats Credit Score
1 simple trick & MY CREDIT SCORE jumped 217 pts. Banks hate this!
www.thecreditsolutionprogram.com

Ads by Google

Most Viewed Articles (Updated Daily)

- Soviets Say Nixon Had Been Booked on Flight 007
- Irish Ban 'Life,' Call It 'Obscene'
- Colder Winters Held Dawn of New Ice Age
- U.S. Scientist Sees New Ice Age Coming
- How to cut through the legal tangles

Log In

Powered by ProQuest Archiver

Start a New Search | Search 1877 - 1995 Historical
About the Archive | Pricing | Account & Purchases | Help | Terms of Service

The Washington Post SUBSCRIBE PostTV Politics Opinions Local Sports National World Business Tech Lifestyle Entertainment Jobs

More ways to get us
Home delivery
Digital Subscription
Gift Subscription
Mobile & Apps
Newsletter & Alerts
Archive
RSS
Facebook
Twitter
Washington Post Live
Reprints & Permissions
Post Store
Photo Store
e-Replica

Contact Us
Help & Contact Info
Reader Representative
Digital Advertising
Newspaper Advertising
News Service & Syndicate

About Us
In the community
Careers
PostPoints
Newspaper in Education
Digital Publishing Guidelin

Partners
WP BrandConnect
Capitol Deal
Fashion Washington
Washington Post
El Tiempo Latino

washingtonpost.com
Ad Choices

© 1996-2014 The Washington Post Terms of Service Privacy Policy Submissions and Discussion Policy RSS Terms of Service

EXHIBIT F



COMMONWEALTH OF VIRGINIA

VS **CR99-1764**

**ANTONIO SHERROD JONES**

THE 27th day of January, 2000 came the Commonwealth of Virginia by its Attorney, John Lynch, and the Defendant came not.

WHEREUPON the Attorney for the Commonwealth moved the Court to try this case in the Defendant's absence, which said motion the Court granted and so ordered.

THEREUPON the Court heard this case, including sworn testimony, without the intervention of a jury, all matters of law and fact being presented to the Court for determination.

UPON CONSIDERATION WHEREOF it is the opinion of the Court that the Defendant is "Guilty" of the charge of "Driving After Having Been Adjudicated an Habitual Offender" as contained in the warrant herein and so finds.

IT IS THEREFORE the Judgment of the Court that the Defendant be and he hereby is sentenced to ninety (90) days in the Arlington County Detention Center, pay a fine of $2,500.00 and payment of the costs of these proceedings.

The defendant shall pay costs of **$2,641.00.**

BE IT REMEMBERED that the Court ordered a bench warrant for the Defendant's arrest for his failure to appear for trial.

ENTERED this 11th day of February, 2000

[signature]
Judge

EXHIBIT G

VID A. BELL, CLERK
LINGTON COUNTY
LINGTON, VIRGINIA



## IN THE CIRCUIT COURT OF ARLINGTON COUNTY, VIRGINIA

COMMONWEALTH OF VIRGINIA ✓ **CR99-1764**
COUNTY OF ARLINGTON, TO-WIT:

To the Sheriff of said County or any Police Officer, Greeting:

You are hereby commanded to arrest **Antonio Sherrod Jones** and bring him **Forthwith** before the Circuit Court of Arlington County, Virginia for his failure to appear on January 27, 2000 for trial; the original charge being Habitual Offender in Violation of Section A.46.2-357.

**Dob:** **4/14/70**
**Ss#:** **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**
**Race:** **Black**
**Sex:** **Male**

NO BOND TO BE SET.

GIVEN under my hand this 11th day of February, 2000.

[signature]
JUDGE OF THE CIRCUIT COURT OF
ARLINGTON COUNTY, VIRGINIA

WITHDRAWN 5/9/05
Cliff / Judge Alper

A COPY:
TESTE: DAVID A. BELL, CLERK
BY [signature]
DEPUTY CLERK

EXHIBIT H

VID A. BELL, CLERK
RLINGTON COUNTY
LINGTON, VIRGINIA

VIRGINIA:

IN THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH

IN THE MATTER OF ANTONIO S. JONES
228 Chowan Drive, Apt. F
Portsmouth, Virginia 23701
Restoration of Privilege to Operate
a Motor Vehicle

LAW NO.: __________

**ORDER**

This cause having come on the petition of Antonio S. Jones to restore his privilege to operate a motor vehicle after having been declared a habitual offender pursuant to the Virginia Code 46.2-361(A); and the Court after hearing all evidence relative thereto and having determined that the said petitioner was eligible to have his driving privileges restored on June 24, 2003;

ADJUDGE, ORDER and DECREE that the privilege to operate a motor vehicle in the Commonwealth of Virginia be and hereby is restored to the petitioner whose birth date is April 14, 1970, and whose social security number is 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.

ENTER: 6/26/03

[signature]
Judge

I ASK FOR THIS:

[signature]
KENNETH R. MELVIN
Attorney for Petitioner

[signature]
DOUG OTTINGER, Deputy C/W
Assistant Commonwealth's Atty.

A copy, Teste: Cynthia P. Morrison
Clerk of the Circuit Court of the
City of Portsmouth, Virginia
By [signature] D.C.

KENNETH R. MELVIN, ESQUIRE
MELVIN & BULLOCK
Attorneys at Law
801 Water Street, Suite 300
Portsmouth, Virginia 23704
757.397.2800

EXHIBIT L

EXHIBIT L

BP-S394.058 **DETAINER ACTION LETTER** CDFRM
SEP 03

**U.S. DEPARTMENT OF JUSTICE** **FEDERAL BUREAU OF PRISON**

| To | Institution |
|---|---|
| **Arlington County Sheriff's Office**<br>**1425 N Courthouse Road**<br>**Arlington, VA 22201**<br>**Attn: Warrants** | **Federal Correctional Institution**<br>**14601 Burbridge Road, SE**<br>**Cumberland, MD 21502**<br><br>Date<br>April 15, 2005 |

| Case/Dkt# | Inmate's Name | Fed Reg No. | DOB/SEX/RACE |
|---|---|---|---|
| | JONES, Antonio Sherrod | 55450-083 | 04/17/70/M/B |
| **Aliases** | | **Other No. SSN: 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** | |

The below checked paragraph relates to the above named inmate:

X This office is in receipt of the following report: **Presentence report indicates the above named has an outstanding warrant in your district for FTA-Driving after having been adjudicated and habitual offender.** Will you please investigate this report and advise what disposition, if any, has been made of the case. **If subject is wanted by your department and you wish a detainer placed, it will be necessary for you to forward a certified copy of your warrant to us along with a cover letter stating your desire to have it lodged as a detainer. If you have no further interest in the subject, please forward a letter indicating so.**

A detainer has been filed against this subject in your favor charging ________________. Release is tentatively scheduled for ________, however, we will notify you no later than **60 days** prior to actual release. **To check on an inmate's location, you may call our National Locator Center at: 202-307-3126 or check our BOP Inmate Locator Website at www.bop.gov.**

Enclosed is your detainer warrant. Your detainer against the above named has been removed in compliance with your request.

Your detainer warrant has been removed on the basis of the attached __________. Notify this office immediately if you do not concur with this action.

Your letter dated ________ requests notification prior to the release of the above named prisoner. Our records have been noted. Tentative release date at this time is ________.

I am returning your ______________ on the above named inmate who was committed to this institution on _________ to serve ___________ for the offense of _____________. If you wish your ____________ filed as a detainer, please return it to us with a cover letter stating your desire to have it placed as a hold or indicate you have no further interest in the subject.

Other:

5-9-05 THE CASE TO WHICH THIS LETTER MAKES REFERENCE TO, HAS BEEN WITHDRAWN AND OUR OFFICE NO LONGER HAS ANY INTEREST IN THE ABOVE SUBJECT.

Sincerely,

[signature]

E. Roberts
Legal Instruments Examiner

MAY 2005
Received
Office
FCI Cumberland

PSI #118

DAIL C HOGAN
ARLINGTON CO SHERIFF

EXHIBIT M

Original - Addressee, Copy - Judgment & Commitment File; Copy - Inmate; Copy - Central File (Section I); Copy - Correctional Services Department